**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CR-06-62ML** |
| | : | |
| | : | |
| **PEDRO MICHAEL GONCALVES** | : | |

**DEFENDANT, PEDRO MICHAEL GONCALVES, MEMORANDUM OF LAW IN SUPPORT OF A MOTION TO SUPPRESS HANDGUN AND COCAINE FOUND IN VEHICLE**

## I. Brief Statement of the Facts

On May 2, 2006, Detective Scott Sullivan obtained warrants to search 406 West Avenue and 83-85 Pomona Avenue, 3rd floor Providence for drugs and weapons. The warrants to search the two homes allege that the Defendant was "storing and distributing crack cocaine from his apartment located at 83-85 Pomona Avenue 3rd Floor Providence, RI and storing and distributing cocaine from 406 West Avenue 1st Floor in Pawtucket, RI.." No warrant was issued to search the Defendant's vehicle. On May 3, 2006, Detective Sullivan watched Mr. Goncalves leave 83-85 Pomona Avenue in a white Lincoln Continental. The Defendant was followed in an unmarked police vehicle by Detective Sullivan, Detective Philbin and Special Agent Cady. Mr. Goncalves drove from the residence at Pomona Avenue to 406 West Avenue. A marked police cruiser was parked on West Avenue with its emergency lights flashing. Mr. Goncalves parked the Continental in the driveway, exited the vehicle, and ran around to the rear of the house. Mr. Goncalves was eventually apprehended by officers in front of the house,

searched, and restrained in the back of the Pawtucket Police cruiser. After officers commenced searching 406 West Avenue, Special Agent Cady, with the assistant of a locksmith, unlocked and searched the white Lincoln Continental that was driven by the Defendant. At the time of the search, the locked vehicle was parked in the driveway and the Defendant was over thirty feet from the vehicle and was securely restrained. As a result of the officers' search of the vehicle, a handgun and cocaine were recovered. The handgun[1] was found under the hood of the vehicle in the engine compartment, wrapped in a t-shirt, and the cocaine[2] was found inside the locked vehicle gas cap. According to the Narrative of Detective Scott Sullivan, "The gas cap was locked at the time and had to be opened using the release next to driver's seat inside the vehicle."

## II. Statement of the Issue

**Circumstances did not exist that justified a warrantless search under the hood of the engine compartment and inside the fuel compartments of the Defendant's vehicle.**

## III. Law and Argument

### A. The White Lincoln Continental was not located within the Defendant's immediate control and a warrantless search of the vehicle was improper.

*Carroll v. United States*[3] is the foundational case that established the search

---

[1] The handgun retrieved was Sig Sauer model P220 .45 caliber handgun bearing serial no. G312555, loaded with 7 rounds of ammunition with a white MECCA tee shirt wrapped around the gun

[2] One plastic bag of suspected powder cocaine, 66.85 grams/ gross weight was discovered inside the vehicle gas cap.

[3] *Carroll v. United States*, 267 U. S. 132 (1925)

incident to arrest, and, since then, the Supreme Court has repeatedly made efforts to refine the parameters of the search. *Chimel v. California*, 395 U.S. 752 (1969) established the standard that pursuant to a lawful arrest an officer may search the area within an arrestee's "immediate control." In *Chimel*, officers with a valid arrest warrant, conducted a warrantless search of a home that exceeded the scope of a search incident to arrest. Police officers, over the objection of the occupant of the house, searched the petitioner's entire home incident to the arrest. The search was held invalid as a search incident to arrest because the officers' search exceeded the scope of the area within the arrestee's "immediate control." The policy behind *Chimel*'s limitation is balancing Fourth Amendment principles of privacy with concerns regarding officer safety when viewing the circumstances of the individual search. To determine the reasonableness of a search under the Fourth and Fourteenth Amendments, *Chimel* requires a case-by-case evaluation of what is the area within the arrestee's "immediate control."

*Chimel's* applicability to automobile search cases was set forth in *New York v. Belton*[4]: The Supreme Court held that as part of a lawful custodial arrest of a vehicle's occupant, an officer may conduct "as a contemporaneous incident of that arrest" a search of the passenger compartment of the vehicle. *Belton's* application is limited to situations where the officer's contact with the defendant occurs while the arrestee is in or within arm's reach of the automobile. If the arrestee is not in the vehicle or appropriate proximity, the contents of the passenger compartment of the automobile are no longer within the arrestee's "immediate control."

Several Circuits have not yet decided whether a warrantless search of an

---

[4] *New York v. Belton*, 453 U.S. 454 (1981).

arrestee's vehicle, where the arrestee is a substantial distance from the vehicle when arrested, is justified. The standard set by the D.C. Circuit, first decided in the 1989 case of *United States v. Fafowora,*[5] and recited in 1993 in *United States v. Strahan,*[6] has been consistently followed by the Fourth, Fifth, Sixth and Seventh Circuits.[7] In *Fafowora*, the defendants were walking away from their jeep when they were arrested. Following the arrest, a search was conducted of the vehicle and drugs were found. The search was found improper, and not permissible under the *Belton* rule, because the officer's contact with the defendants occurred outside and away from the car.

In *United States v. Thornton,* 325 F.3d 189, 196 (4th Cir. 2003), the Fourth Circuit provided a clear recitation of the rationale for the "search incident to arrest" exception: "(1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial."[8] The Court in *Thornton*, however, was careful not to impose a requirement on officers that might endanger them, such as an interpretation implying the *Belton* rule requires a confrontation or signaling between officers and an arrestee prior to a search incident to arrest. *Thornton* is distinguishable

---

[5] 865 F.2d 360 (D.C. Cir. 1989)

[6] 984 F.2d 155 (6th Cir. 1993).

[7] *See United States v. Thornton* 325 F.3d 189, 196 (4th Cir. 2003); *United States v. Dennison*, 410 F.3d 1203 (10th Cir. 2005); *United States v. Pittman*, 418 F.3d 704 (7th Cir. 2005); *United States v. Green,* 324 F.3d 375 (5th Cir. 2003); and *United States v. Herndon* , 393 F.3d 665(6th Cir. 2005).

[8] *Citing Knowles v. Iowa,* 525 U.S. 113, 116 (1998) and, *inter alia, United States v. Robinson*, 414 U.S. 218, 234 (1973).

from the instant case because in *Thornton*, the Defendant admitted that he was in "close proximity to his vehicle when Officer Nichols approached him" and therefore, no argument was made that the vehicle was not within the Defendant's "immediate control." No argument can be made that the vehicle in the instant case was in the Defendant's "immediate control."

**B. Even assuming the white Lincoln Continental was in close enough proximity to the Defendant to be within the Defendant's "immediate control," there were no circumstances to justify a warrantless search beyond the passenger compartment to the locked fuel and engine compartments of the vehicle.**

Under *Mincey v. Arizona*, 437 U.S. 385, 390-91 (1978), the Supreme Court emphasized that the government bears the burden of proving the lawfulness of a warrantless search. If there were circumstances in the instant case justifying a warrantless search of the Lincoln Continental under the search incident to arrest exception, one must still make the inquiry as to whether the area searched was within the Defendant's "immediate control." The consensus of *Belton*, *Chimel*, *Strahan*, *Thornton* and others is that the area within the Defendant's immediate control, when a Defendant is in or near the vehicle, justifies a search of the passenger compartment of the vehicle only—not a search of the entire vehicle. One need only examine the rationale for the search incident to arrest exception to understand why the passenger compartment of the vehicle circumscribes the area within which the search might validly be conducted. The policy was well stated in *Thornton*:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself is

> frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction and the area into which an arrestee might reach in order to grab a weapon or evidentiary items.[9]

The officers conducting the search of the Defendant's vehicle in the instant matter far exceeded the limits of the search incident to arrest exception by searching the locked fuel and engine compartments of the vehicle. Their excessively broad search of the locked fuel and locked engine compartments at the time of arrest is without any cognizable justification.

The First Circuit case, *United States v. Lopez,*[10] is an example of a permissible search by officers of a locked compartment in a vehicle. The facts of *Lopez* are distinguishable not only because the Defendant was sitting inside the vehicle when he was arrested, but more importantly, because the officers had independent probable cause to believe the vehicle contained contraband, and were not relying on the "search incident to arrest" exception. The officers obtained information from a drug-sniffing dog and the Defendant's own admission that there was contraband to be found in the car. Without probable cause, the officers' search of the locked compartment of the vehicle would have been obviated. In the instant matter, the fuel compartment in which contraband was found, and the area underneath the hood of the car were locked, but there is no independent basis for probable cause to support the extensive search of the vehicle's compartments. No viable argument can be made that the officers conducting the on-site search of the Defendant's vehicle had any realistic concern pursuant to the "search incident to arrest exception" that the Defendant, arrested over thirty feet from his

---

9 *Id.* at 196.

10 380 F.3d 538, 545 (1st Cir. 2004).

vehicle, would have access to use or destroy either the weapon seized under the hood of the car, or the cocaine found in the locked fuel compartment.

Another possible manner the state could attempt to validate the search of the locked compartments of the vehicle would be if the Defendant consented to the search of his vehicle. There is no evidence either that the police asked to search the vehicle, or that either the Defendant or any other person claiming an interest in the vehicle, consented to any search of the vehicle. The officers took it upon themselves to unlock the vehicle, and the compartments in the vehicle while the Defendant was restrained. The Defendant was actually handcuffed in the police vehicle while the police waited for a tow-truck operator to arrive to open the doors of the Lincoln Continental since the Defendant was not in possession of the key to the vehicle and the key could not be located.

A third possible explanation for extending the search of the vehicle outside the passenger compartment of the vehicle would be if the officers, while conducting the search, were able to sense, by smell or sight, that there was contraband in the vehicle. The officers in *United States v. Taylor* [11] had probable cause to search the passenger compartment of the vehicle when an officer stuck his head inside the car to speak to the Defendant, and noticed the smell of marijuana emanating from the car. Pursuant to the officer's search of the passenger compartment of the car in *Taylor*, the officer found drugs lying in plain view in the sunroof area of the car. In *United States v. Staula*,[12] an officer smelled burnt marijuana while approaching the Defendant's car pursuant to a valid stop. After searching the passenger compartment of the car and locating marijuana,

---

[11] 162 F.3d 12 (1st Cir. 1998).

[12] *United States v. Staula*, 80 F.3d 596, 605 (1st Cir. 1996).

the officer had probable cause to continue the search the passenger compartment of the car for additional contraband. These two cases demonstrate the principle acknowledged in the First Circuit that probable cause may "accrete gradually;"[13] however, there are no officer statements or other evidence to suggest that the officers, upon approaching the vehicle, developed probable cause to search either the vehicle, or to extend a search to specific areas of the vehicle. Assuming *arguendo* that the search of the passenger compartment incident to arrest was lawful, there is neither evidence nor statements provided in the state's discovery supplied to Defendant that can be construed to indicate that the officer's perceived or collected any plain view or olfactory evidence to extend the search of the vehicle beyond the passenger compartment of the vehicle.

Finally, the state may argue that the "inevitable discovery" doctrine applies on the basis that the officers' would lawfully have found the contraband eventually pursuant to an inventory search. The First Circuit has set forth the following test for application of the inevitable discovery doctrine: "First, whether the legal means [are] truly independent; second, whether both the use of the legal means and the discovery by that means are truly inevitable; and, third, whether the application of the inevitable discovery exception either provides an incentive for police misconduct or significantly weakens fourth amendment protection." *United States v. Scott*, 270 F.3d 30, 42 (1st Cir. 2001).

In applying the inventory search exception of the inevitable discovery doctrine, the Supreme Court has imposed the additional requirement of a "standardized procedure." To search a locked fuel compartment and engine compartment under the hood of the automobile is not part of any constitutionally valid "standardized procedure."

---

[13] *United States v. Lee*, 317 F.3d 26, 32 (1st Cir. 2003).

Any standardized procedure that provides for the removal of a car parked at Defendant's residence to the impound, and then the unlocking of a locked fuel compartment and searching under the hood of the vehicle, would not comport with the policy behind a valid inventory search as set forth in *Colorado v. Bertine*, 479 U.S. 367 (1987). The "standardized procedure" must consist of procedures with the purpose of protecting the owner's property against loss while in police custody and guard the police from danger. The procedure for the inventory search, may not belie that the officers' sole purpose for conducting the search is investigatory. In the instant situation, it is clear that when the officer's failed to locate contraband in the passenger compartment of the car, they extended their search in an illegal attempt to garner additional evidence against the Defendant. These items would not have inevitably been located pursuant to a properly conducted inventory search procedure.[14] To allow the illegally seized items to be admissible evidence would serve as an incentive for police misconduct and weaken the Fourth amendment's protection.

If the officers' search of the Defendant's vehicle had been limited to the passenger compartment of the vehicle, the officers' search would not have produced the handgun and cocaine located in the vehicles' fuel and engine compartments. The fuel and engine compartments of the vehicle are clearly outside the scope of any valid search or exception, on the grounds that the vehicle was not within the arrestee's immediate

[14] The state's discovery packet did not include a police inventory form. It is customary procedure during an inventory search for the police to prepare an inventory form documenting the contents of the vehicle to preclude a defendant from making a false claims of lost or stolen property

control, and that the search exceeded the scope of any validly conducted warrantless search.

CONCLUSION:

WHEREFORE, for all the foregoing reasons, the Defendant, Pedro Michael Goncalves, prays that this Honorable Court order the suppression of the cocaine and handgun from introduction into evidence, of whatever nature and kind, derived from improper search of the passenger area, fuel compartment, and engine compartment of the white Lincoln Continental on the date of the Defendant's arrest.

Respectfully Submitted,
Pedro Michael Goncalves,
By His Attorney,

/s/______________________
David Cooper, Esquire
R.I.Reg. 1981
127 Dorrance Street
Providence, Rhode Island 02903

**CERTIFICATION OF SERVICE**

I hereby certify that on this 30th day of November, 2006, this document has been filed electronically, and is available for viewing and downloading to the following counsel of record registered with this Court's ECF system. Paper copies will be served on non-registered attorneys of record, if any:

Sandra Beckner
Assistant United States Attorney
Office of the United States Attorney
50 Kennedy Plaza
8th Floor
Providence, Rhode Island 02903

s/ David Cooper______________