**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-062ML** |
| | : | |
| **PEDRO MICHAEL GONCALVES** | : | |

# GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

## INTRODUCTION

The defendant contends that the Court should suppress the fully loaded .45 caliber firearm found in the engine compartment of the defendant's vehicle and the cocaine seized from the gas cap of that same vehicle based upon his assertion that the vehicle search was in violation of his Fourth Amendment rights. Because the vehicle search was supported by probable cause, the defendant's arguments are without merit.

## FACTS

On May 2, 2006, Detective Scott Sullivan, a Special Federal Officer with High Intensity Drug Trafficking Area (HIDTA) Taskforce, obtained two search warrants, one for the defendant's residence at 406 West Avenue, Pawtucket, Rhode Island, and the other for defendant's "stash" house at 83-85 Pomona Avenue, 3rd Floor, Providence, Rhode Island. That affidavit, a copy of which is attached, set forth facts and circumstances relating to the storage and distribution of crack cocaine by the defendant; as

well as the connection between the defendant, the unlawful activity and the two addresses.

On May 3, 2006, members of the HIDTA Taskforce, set up surveillance on 83-85 Pomona Avenue. They observed the defendant leave in a Lincoln Continental, and they followed him. Before the HIDTA Taskforce could arrange for a patrol car to stop the defendant, he began to speed away. When police observed the defendant talking on the phone, detectives became concerned that the defendant was calling an accomplice to destroy the evidence. The decision was made to execute their search warrants.

Members of the HIDTA Taskforce continued to follow the defendant, and called for a patrol car to secure 406 West Avenue. As the defendant approached 406 West Avenue, a police cruiser waited in the driveway with its lights flashing. The defendant made an abrupt turn into the driveway, side swiping his mother's Jeep Cherokee. Defendant stopped his vehicle and a foot chase began. Officers repeatedly yelled for the defendant to halt, but he continued to flee. Eventually the defendant ran into a chain link fence and fell to the ground. He continued to struggle with law enforcement, kicking his feet and swinging his arms towards the officers present. One officer used pepper spray, and finally the defendant was subdued.

Detective Sullivan and other members of law enforcement executed the search warrant at 406 West Avenue. While searching

406 West Avenue, the officers located and seized a number of items, including crack cocaine, drug paraphernalia, 9mm shell casings and currency. While they were searching the residence, Special Agent (SA) Jeff Cady with the Federal Bureau of Investigation (FBI), searched the defendant's vehicle. SA Cady recovered cocaine from the gas cap and a fully loaded .45 caliber handgun secreted in the engine compartment.

Other members of the HIDTA Taskforce simultaneously searched 83-85 Pomona Avenue. While searching 83-85 Pomona Avenue, the officers located and seized a number of items, including crack cocaine, drug paraphernalia, and paperwork in the name of the defendant.

**ARGUMENT**

The search of Defendant Goncalves' vehicle falls within the well-established exception to the warrant requirement known as the "automobile exception." Pursuant to that exception, "[a] warrantless search of an automobile will be upheld if 'officers have probable cause to believe that the vehicle contains contraband.'" United States v. Lopez, 380 F.3d 538, 543 (1st Cir. 2004) (quoting United States v. Ross, 456 U.S. 798 (1982)); see United States v. Fiasconaro, 315 F.3d 28, 37 (1st Cir. 2002).

The permissible scope of a search pursuant to the automobile exception includes not only the vehicle itself, but also any containers found within the vehicle. California v. Acevedo, 500 U.S. 565, 579-80 (1991). Under the automobile exception, officers may search any part of the vehicle, or any container within the vehicle, that they have probable cause to believe contains the contraband or evidence that they are seeking. See United States v. Ross, 456 U.S. 798, 825 (1982) ("We hold that the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant."). This includes the engine compartment and the gas tank. See United States v. Marchena-Borjas, 209 F.3d 698, 700 (8th Cir. 2000) (search of the engine compartment); United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998) (search of the engine compartment); United States v. Anderson, 114 F.3d 1059, 1067 (10th Cir. 1997) (search of the gas tank); United States v. Harwood, 998 F.2d 91, 97 (2nd Cir. 1993) (search of door panels); United States v. Kelly, 961 F.2d 524, 528 (5th Cir. 1992) (search of the engine compartment).

In this case, there is abundant probable cause to believe that the vehicle contained drugs. The affidavit filed in support of the two search warrants and attached to this response, as well as the defendant's high speed flight from his stash house to 406 West Avenue, immediately followed by a foot chase ending with his

assault upon officers, certainly amounts to probable cause to believe the Lincoln Continental, the defendant's escape vehicle[1], contained contraband or evidence of a crime.

As stated in paragraph 3 of the affidavit, Source One told the affiant, Detective Sullivan, that the defendant makes narcotics deliveries using the Lincoln Continental. According to the affidavit, Detective Sullivan was able to verify much of Source One's information: he arranged for a controlled purchase of narcotics from the defendant; he conducted surveillance of the defendant at 83-85 Pomona Avenue, observing the Lincoln Continental parked in the driveway and being operated by the defendant; he received information from other law enforcement officers corroborating Source One's information; he seized large amounts of U.S. currency from the defendant; he discovered that the defendant has a criminal history of narcotics trafficking; and he subpoenaed phone records corroborating the phone number relayed by Source One.

The verified information from Source One, who had proven to be reliable in the past (see paragraph 2 of the affidavit), corroborated by the recent controlled purchase of narcotics, and

[1] The Lincoln Continental defendant used to flee from police was actually registered to his girlfriend, Julia Baptista. Although the defendant bears the burden to prove standing, Ms. Baptista was interviewed by law enforcement. She told them that the Lincoln Continental was the defendant's car and he simply asked her to put it in her name so that the insurance would be cheaper.

coupled with the defendant's flight from law enforcement constitutes probable cause to arrest the defendant and search his vehicle. See United States v. Link, 238 F.3d 106, 110-11 (1st Cir. 2001) (corroborated information from an informant provided probable cause to arrest); United States v. Cleveland, 106 F.3d 1056, 1063 (1st Cir. 1997) (information from informants combined with behavior indicative of a drug transaction gave agents probable cause to arrest the drivers of the vehicles and search their vehicles); see also United States v. Taylor, 162 F.3d 12, 20 (1st Cir. 1998) ("the tip from a known, reliable informant, which was corroborated in significant aspects . . . exhibited sufficient indicia of reliability to justify the investigatory stop").

Though not raised by defense, the government would be remiss if it did not distinguish Coolidge v. New Hampshire, 403 U.S. 443 (1971) (plurality opinion). In Coolidge, after throwing out a search warrant authorized by a justice of the peace who was also a police officer, four justices held that the automobile exception was inapplicable when the defendant's vehicle was parked in the driveway of his residence. See Coolidge, 403 U.S. at 458-60. The Court determined that the rationale underlying the automobile exception, that is, the inherent exigency associated with a moveable vehicle, was not present because (1) the police had been aware of the role of the vehicle for some

time; (2) the defendant already had ample opportunity to destroy evidence; (3) there was no suggestion on the night of the search that the automobile had been used for an illegal purpose; (4) the opportunity to search the car was not "'fleeting'"; and, (5) the police were not searching for stolen property, contraband or dangerous items. See id.

The Coolidge Court's analysis does not apply in the case at hand. Although the officers in this case likely had probable cause to search the automobile before the defendant's flight, it was the high-speed chase as defendant fled from law enforcement that led to the search of the vehicle. The flight alone makes this case far different from Coolidge, where the vehicle was parked at the residence, the defendant was inside the home, and the investigation had been ongoing for a lengthy period of time.

Other aspects of the Coolidge Court's reasoning likewise do not apply here. In Coolidge the defendant had ample time to destroy evidence in his vehicle, but in this case, Defendant Goncalves did not have that opportunity. Additionally, even after his arrest, the defendant could have called his mother or his girlfriend, the vehicle registrant, to destroy any evidence in the vehicle. Also, in Coolidge, the Court noted that the vehicle had not been used for an illegal purpose on the night of the search; clearly the situation at hand is a different story. Furthermore, unlike in Coolidge, the officers here were searching

for contraband and dangerous items. In short, the search of Defendant Goncalves' vehicle occurred under completely different circumstances than the vehicle search in Coolidge.

In a case directly on point, the Fourth Circuit confronted a similar situation and concluded that Coolidge was inapposite. See United States v. Brookins, 345 F.3d 231, 236 (4th Cir. 2003). In Brookins, the police had reliable informant information that the defendant dealt drugs from a particular intersection, the police knew the defendant had a narcotics criminal history, and as they passed the intersection in question, they saw the defendant engaging in what appeared to be a drug deal utilizing his vehicle. See id. at 233. The police arrested the defendant, and the defendant's wife fled from police in the defendant's vehicle. See id. Fifteen minutes later the police found the defendant's vehicle parked at the defendant's mother-in-law's residence, and the defendant's wife was present. See id. at 234. The police searched the defendant's vehicle, and the defendant moved to suppress the evidence found citing Coolidge.

The Fourth Circuit reversed the lower court and upheld the search. In part, the court relied upon Maryland v. Dyson, 527 U.S. 465 (1999), in which the Supreme Court stated, "the 'automobile exception' has no separate exigency requirement." The Fourth Circuit found the automobile exception applicable because the vehicle in question was operational and thus

"'readily moveable,'" and there was probable cause to believe that the vehicle contained contraband given the recent flight. See id. at 238.

Likewise, in United States v. Fields, 456 F.3d 519, 525 (5th Cir. 2006), the Fifth Circuit found the automobile exception applicable. In that case, the defendant, who had fled from the police, crashed his vehicle into a duplex and then fled on foot. The Fifth Circuit concluded Coolidge was not applicable despite the defendant's ownership interest in the duplex, because the duplex was a stash house, and the defendant had crashed the vehicle into the duplex while fleeing the police. See id. at 525; see also California v. Carney, 471 U.S. 386, 391 (1985) (applying the automobile exception to a warrantless search of a mobile home); United States v. Amorin,810 F.2d 1040, 1041 (11th Cir. 1987) (distinguishing Coolidge in the context of a search of an automobile parked at defendant's residence because the defendant was about to use the vehicle). Significantly, the Fifth Circuit distinguished between a vehicle parked at a residence and one crashed at the residence. A defendant fleeing the police should receive no greater Fourth Amendment protection because he happened to crash his vehicle on his own property as opposed to someone else's.

The case at hand more closely resembles Brookins or Fields than Coolidge. First, law enforcement and the defendant were

engaged in a high speed chase just prior to searching the vehicle. The recent flight greatly increases the chances that the vehicle contained contraband, and demonstrates how elusive evidence within an automobile may be. Second, defendant's vehicle had not been parked at his home for a period of time as in Coolidge; instead, he literally crashed it into the other vehicle parked at the residence with the police in hot pursuit. Had he crashed a few seconds earlier, the Court would not even be considering this issue.

As a final point, unlike in any of the cases discussed above, the officers in the case at hand had a warrant for the premises on which the vehicle was located at the time of the search. Other Circuits have held that, "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." United States v. Percival, 756 F.2d 600, 612 (7th Cir. 1985) (surveying cases that permitted a search of an automobile located on the premises during the execution of a search warrant). Thus, the case before this Court presents a situation where the defendant crashed his vehicle on premises for which the officers had a valid warrant. Either the automobile exception is in effect, or the warrant is.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendant’s motion to suppress.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney’s Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATION

I hereby certify that on December 11, 2006, I caused the within "Government's Response to Defendant's Motion to Suppress" to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. David Cooper
127 Dorrance Street
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj