**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-062ML** |
| | : | |
| **PEDRO MICHAEL GONCALVES** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR A NEW TRIAL**

**INTRODUCTION**

The defendant filed a motion for a new trial arguing that he obtained newly discovered evidence, that the verdict was unsupported by sufficient evidence, that the Court erred in sustaining objections, that the Court erred in admitting testimony of certain witnesses, that the Court erred in refusing to instruct the jury on the lesser included offense of possession and that the government did not fulfill its discovery obligations.[1] The defendant's motion is completely without merit. Accordingly, the Court should deny the defendant's motion for a new trial.

[1] The Court has jurisdiction to consider the defendant's motion because it was filed five days after the verdict was returned. Fed. R. Cr. P. 33 requires that a motion for new trial, other than a motion based upon newly discovered evidence, be filed within seven days of the verdict of guilty. Defendant improperly filed a motion for a new trial on the second countable day after his trial. This motion was refused for failure to comply with local rules. The defendant then re-filed his motion for new trial and filed a second motion for new trial on day five as computed in accordance with Fed. R. Cr. P. 45(a)(1) and (2).

**RULE 33 STANDARD**

"'Motions for new trial are directed to the broad discretion of the trial judge, who may weigh the evidence and evaluate the credibility of witnesses in considering such a motion.' United States v. Indelicato, 611 F.2d 376, 387 (1st Cir. 1979). However, '[t]he remedy of a new trial is sparingly used, and then only where there would be a 'miscarriage of justice . . . and where the evidence preponderates heavily against the verdict.' Id." United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001) (reversing the district court's decision to grant a new trial because the evidence against the defendant was strong, and the error, if any, was harmless); United States v. Andrade, 94 F.3d 9, 14 (1st Cir. 1996) (affirming the district court's denial of a motion for new trial where defendant did not present new evidence, did not point to any grave errors, and merely reiterated his arguments made at trial).

**NEWLY DISCOVERED EVIDENCE**

Defendant moves for a new trial arguing that Detective Scott Sullivan testified erroneously when he claimed to have seized over $1,000 from the defendant's person. The defendant disagrees with the officer's testimony and requests that the government provide him with a receipt. He then claims, "[s]ince the receipt documentation of the money was never introduced at trial nor provided to the defendant in discovery this is in fact newly

discovered evidence if in fact the government never retrieved the large amount of money off the defendant."

The defendant's argument does not make sense. "A defendant is entitled to a new trial on the basis of newly discovered evidence only if he can establish that (1) the evidence was unavailable or unknown at the time of trial; (2) the defendant's failure to uncover the evidence earlier was not due to a lack of diligence; (3) the tendered evidence is material and not simply impeaching or cumulative; and (4) the new evidence will probably result in an acquittal if the defendant is retried." United States v. George, 448 F.3d 96, 101-02 (1st Cir. 2006) (affirming the denial of a motion for new trial because the defendant's new evidence "creates no realistic likelihood of acquittal.").

In the case at hand, the defendant does not come forward with new evidence - he merely disagrees with the government's evidence and requests that the government provide him with a receipt. Furthermore, the defendant's contention, while erroneous, could nonetheless have been explored prior to trial. Even the defendant concedes that the seizure of over $1,000 was contained within the police reports which he had months before trial. Finally, the defendant's request for a receipt is not material, nor would a receipt have had any likelihood of producing an acquittal. Detective Sullivan, a credible witness at trial, testified that he seized over $1,000 from the

defendant's person. This was one fact, among many, presented to the jury for their consideration. Whether the state police have documentation other than the police reports reflecting the seizure does not negate the truth of Detective Sullivan's testimony.

**SUFFICIENCY OF THE EVIDENCE**

In support of his motion for a new trial, the defendant claims that the Court erred in denying his motion for judgment of an acquittal at the conclusion of the government's case and that the jury verdict was "contrary to the weight of the evidence" and unsupported by "substantial evidence." As he argued when making his Rule 29 motion at trial, the defendant contends that there was no evidence that he knew about the drugs at 83-85 Pomona Street, that there was no evidence that the defendant intended to distribute the drugs at 406 West Avenue, and that there was no evidence that the defendant knew about the firearm or used it in a drug trafficking offense.

In evaluating a sufficiency challenge in the context of Rule 29, the Court should draw all reasonable inferences in favor of the prosecution and determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. See Andrade, 94 F.3d at 12. In the context of a Rule 33 sufficiency challenge, a new trial is warranted "'only where there would be a miscarriage of justice'" or "'where the evidence preponderates heavily

against the verdict.'" Id. at 14.

The evidence in this case was overwhelming. The government established a connection between the defendant and 83 Pomona Street, 3rd Floor through the testimony of the landlord, Hector Olivo,[2] the testimony of Detective Sullivan,[3] and the testimony of Detective Richard Ruggiero.[4] All three of these witnesses testified to the defendant's use of 83 Pomona Street, 3rd Floor in the months preceding the execution of the search warrant. Additionally, the government introduced physical exhibits seized from 83 Pomona Street, 3rd Floor that connected the defendant to the apartment.[5] Most significantly, the defendant was observed

---

[2] Hector Olivo testified that he saw the defendant at 83 Pomona Street twice a week between October 2005 and May 3, 2006. He also testified that the rent was paid in cash each month, sometimes by Mr. Fernandes and sometimes by the defendant. He testified that he saw the defendant alone in the apartment when he fixed the toilet.

[3] Detective Sullivan testified that he conducted surveillance during the month of April 2006. He observed the defendant at 83 Pomona Street on at least 10 occasions. He also testified that he saw the defendant's vehicle at 83 Pomona Street.

[4] On cross-examination, Detective Ruggiero testified that he observed the defendant exiting 83 Pomona Street. Additionally, Detective Ruggiero, Detective Jon Theroux, and Detective Timothy Sanzi all testified that only one bedroom in 83 Pomona Street, 3rd Floor appeared to be occupied and that men's clothing was in that bedroom.

[5] The government seized 52 photographs of the defendant from the bedroom at 83 Pomona Street. The government introduced five of these photographs into evidence. Also, the government introduced an Athena's Novelties receipt of the defendant's girlfriend that was seized from the same bedroom.

leaving 83 Pomona Street immediately prior to the discovery of the drugs. The defendant then fled from police. Contrary to the defendant's assertion, the testimony regarding the stash house at 83 Pomona Street, 3rd Floor, the evidence seized from all of the locations, and the defendant's behavior on May 3, 2006, support the jury's verdict of guilty.

Likewise, the government proved the defendant's knowing possession of the firearm. The firearm was located in the defendant's vehicle, which he was driving immediately prior to the seizure; other ammunition was found in the defendant's vehicle suggesting his involvement with firearms; and, the firearm, like the cell phones, money, packaging material, cutting agents and drugs themselves, are all implements of the drug trade. Considering all of the evidence in this case, a rational jury could and did conclude that the defendant knowingly possessed a firearm.

The defendant claims that there was insufficient evidence to support a verdict that he intended to distribute the crack cocaine seized from his bedroom at 406 West Avenue; however, there was no evidence of drug use and there was considerable evidence of drug distribution.[6]

As the court in Andrade noted, rarely is there direct

---

[6] The defendant did not testify that the crack cocaine was for his personal use and statements of his attorney to this effect are not evidence.

evidence of a defendant's intent to distribute in a case in which the defendant was not caught in the act of dealing. Id. That being said, a rational jury is entitled and expected to draw reasonable inferences from the available circumstantial evidence. Id.

In this case, as in Andrade, Detective Ruggiero offered opinion testimony that 10 grams of crack cocaine was a quantity consistent with distribution. He also testified that he has never seized that quantity of crack cocaine from a user; that 10 grams of crack cocaine has a street value of at least $1,000; that 10 grams of crack cocaine could be converted into 50 $20 rocks or 100 $10 rocks; that users typically use all of their cash to feed their habit and do not store crack cocaine; and, that many of the items seized from the defendant are "tools of the trade" in the drug business. Cf. Andrade, 94 F.3d at 13. In light of all the evidence seized in this case corresponding to distribution as well as Detective Ruggiero's testimony regarding the quantity of crack cocaine seized from 406 West Avenue, a rational jury could conclude that the defendant possessed the 10 grams of crack cocaine found at 406 West Avenue with the intent to distribute it.

Finally, the defendant maintains there is no evidence that he used the firearm in his drug business. The defendant, however, was not charged or convicted of using a firearm during

and in relation to his drug trafficking. Instead, he was charged and convicted of possession of a firearm in furtherance of his drug trafficking. As already explained, the government proved the defendant's knowing possession of the firearm through compelling circumstantial evidence. Detective Ruggiero and Detective Sullivan testified that firearms are "tools of the trade" in the drug business. Given the type of firearm seized, the location of the firearm, and the manner in which it was stored, a rational jury could easily conclude that the defendant possessed this firearm to further his drug business.

For all of the reasons discussed, the Court correctly denied the defendant's motion for a judgment of acquittal pursuant to Fed. R. Cr. P. 29(a). Likewise, the Court should deny the defendant's Rule 33 motion for a new trial because the record fully supports the jury's verdict.

**EVIDENTIARY CHALLENGES**

The defendant moves for a new trial because he contends (1) that the Court erred when it allowed Detective Sullivan and Detective Ruggiero to provide opinion testimony that the 10 grams of crack cocaine seized from 406 West Avenue was consistent with distribution; (2) that "the court erred in sustaining objections in questions addressed to the witnesses . . . called by the Government to testify at the trial;" (3) that Detective Ruggiero was allowed to testify regarding the use of cellular phones in

the drug business; (4) that the government did not subpoena the receipt book of Hector Olivo; and (5) that the telephone records were introduced at trial. The defendant's contentions are vague, involve gross mischaracterizations of the evidence, and are contrary to the law of this Circuit.

The Court did not err in allowing experienced agents to testify about the narcotics business. The First Circuit has held that the Government may elicit testimony regarding whether a quantity of drugs is consistent with distribution. See United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute). Likewise, agents may testify regarding the "tools of the trade" in the drug business. See, e.g., United States v. Alosa, 14 F.3d 693, 696-97 (1st Cir. 1994); United States v. Tejada, 886 F.2d 483, 486-87 (1st Cir. 1989); United States v. Allen, 269 F.3d 842, 846 (7th Cir. 2001) (allowing expert testimony regarding "'tools of the trade'"). In addition to testifying regarding the "tools of the trade," agents have been permitted to testify about the locations in which drug activity occurs. See United States v. Isler, 429 F.3d 19, 26-27 (1st Cir. 2005) (allowing agent testimony about the features of a drug house and that defendant's house was consistent with other drug houses); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (allowing testimony regarding how drug points

operate). The law is clear – the Court did not err in allowing the agents to express opinions based upon their training and experience.

The defendant also complains about the government's failure to subpoena Hector Olivo's receipt book. The legal basis of the defendant's complaint is unclear. The defendant contends that this receipt book is exculpatory, but does not explain his position. It is undisputed that Eugene Fernandes rented 83 Pomona Street, 3rd Floor from Hector Olivo and that the lease was in Fernandes' name. At trial the government introduced a rent receipt in the name of Eugene Fernandes. See Government Exhibit 8. Moreover, the government elicited testimony from Hector Olivo to this effect. The government's position throughout the trial was that the defendant maintains everything he owns or uses related to his drug business in someone else's name. In short, the government does not view the receipt book as exculpatory. Not only does the government not view the receipt book as exculpatory, the government does not have possession of the receipt book and has not even seen it.[7] Therefore, to the extent

---

[7] According to Mr. Olivo, the defense counsel interviewed him prior to trial. During discovery, the government provided the defense counsel with a copy of the rent receipt seized from 83 Pomona Avenue, as well as the interview of Detective Sanzi with Eugene Fernandes. Courts have held that if the information is available to the defense from other sources or the defense already possesses the information, Brady does not require the government to disclose the information. See, e.g., United States v. Irizarry, 404 F.3d 497, 501 (1st Cir. 2005) (no Brady

the defendant contends the government did not fulfill its obligations under Brady v. Maryland, 373 U.S. 83 (1963), his arguments are without merit.

The defendant complains that he was not aware of the phone number, 632-5246, that Hector Olivo obtained from his business records and had with him at trial to refresh his recollection. However, the phone number was the phone number from the search warrant affidavit that the defendant subpoenaed for the suppression hearing. The defendant introduced records pertaining to 632-5246 at that hearing. It also was the same phone number included on a car rental receipt the defendant gave to the government but did not introduce at trial. Clearly, the defendant's claim that the phone number was not previously disclosed to him is not true.

The defendant moves for a new trial because Hector Olivo testified that he contacted the defendant at 632-5246. As a preliminary matter, a witness may use anything to refresh his recollection, and in this case, Hector Olivo used a number

---

violation because the defendant could have discovered an exculpatory statement that was referred to in several reported cases through due diligence); United States v. Bender, 304 F.3d 161, 164 (1st Cir. 2002)(no Brady violation when government disclosed witness's mental health problems late because defense was aware of the witness's mental health history); United States v. Middlemiss, 217 F.3d 112, 123 (2d Cir. 2000)(no Brady violation when government failed to disclose a memo of an interview with a witness because the witness was a defense witness and defendants were aware of his possible exculpatory testimony).

recovered from his rental records. See Fed. R. Evid. 612; Edward J. Imwinkelried, Evidentiary Foundations § 10.07[2], at 423 (5th ed. 2002). Nonetheless, the Court later sustained the defendant's objection and struck all testimony of the phone number from the record. The Court instructed the jury to disregard any testimony about the phone number and the government made no mention of this phone number in closing arguments. Therefore, to the extent there was any error in initially allowing such testimony, it was certainly harmless.

The Court also did not err in admitting the telephone records of Eugene Fernandes and Bill Cosby. The authenticity of these records was stipulated to by the defense; the records were relevant because they pertained to phones seized from the defendant and supported the government's evidence of modus operandi; and the records were provided to the defense on Monday, February 26, 2007, when the government gave the defendant a copy of the exhibit book.

The records were disclosed to the defendant in accordance with the discovery rules. The phone numbers and the fact that the cellular phones were seized was included in the police reports that were provided at least six months before trial. The defense could have subpoenaed these records at any time as the government did during the month of February 2007. The records were not exculpatory and thus their production was not governed

by Brady v. Maryland, 373 U.S. 83 (1963). Finally, the government provided the defendant with a copy of the records prior to the beginning of the trial. The defendant points to no discovery violation and the government is unaware of any.

The last evidentiary challenge raised by the defendant concerns the Court's "sustaining" objections made during the testimony of the government's witnesses. No single instance is mentioned, and thus, the government is at a loss as to how to respond to the defendant's motion. The government's counsel rarely objected during the testimony of witnesses, some of those objections were overruled, and the vast majority of objections made and sustained at trial were objections made by defense counsel. The government does not understand the defendant's argument.

**JURY INSTRUCTIONS**

The defendant moves for a new trial because the Court denied him a jury instruction for the lesser-included offense of simple possession. The defendant only moved for this instruction with respect to Count II of the indictment. Given that the defendant was convicted of all five counts of the indictment, that those counts run concurrently and that Count I carries a greater penalty than Count II, the defendant's conviction on Count II will have no impact upon his sentence. Nonetheless the Court correctly denied the defendant's request. See United States v.

Anello, 765 F.2d 253, 263 (1st Cir. 1985) (affirming the district court's refusal to give an instruction on simple possession where the evidence did not warrant such an instruction); see also United States v. Henson, 945 F.2d 430, 440 (1st Cir. 1991) ("A defendant is entitled to a lesser included offense instruction only if the evidence would permit a rational jury to find guilt under the lesser charge and to acquit on the charge alleged."); United States v. Young, 655 F.2d 624, 627 (5th Cir. 1981).

**CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendant's motion for a new trial.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATION

I hereby certify that on March 12, 2007, a copy of the within "Government's Response to Defendant's Motion for a New Trial" was filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Mr. David Cooper
127 Dorrance Street
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj