## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES

    v.                                                    CR. No. 06-062-ML

PEDRO MICHAEL GONCALVES


### MEMORANDUM AND ORDER

Petitioner Pedro Michael Goncalves("Goncalves"), proceeding
*pro se*, has filed a timely motion to vacate, set aside, or correct
his sentence pursuant to 28 U.S.C. § 2255, based entirely on the
alleged ineffectiveness of both his appointed and his retained
counsel. For the reasons stated below, Goncalves' motion is denied.

### I.  Background and Travel

Goncalves was indicted by a grand jury on May 10, 2006 on
possession with intent to distribute cocaine and cocaine base in
violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)-(C)(Counts I-III);
being a felon in possession of a firearm in violation of 18 U.S.C.
§922(g)(Count IV); and possession of a firearm in furtherance of a
drug trafficking crime in violation of 18 U.S.C. §924(c)(Count V).
(Dkt. No. 1). The details of the offenses with which Goncalves was
charged are set forth in United States v. Goncalves, 642 F.3d 245,
247-248 (1st Cir. 2011), *cert. denied*, –U.S.–, 132 S.Ct. 596, 181
L.Ed.2d 437 (2011) and, therefore, only a brief summary is provided

1

here. However, the complicated procedural history of the case is set forth in some detail.

In February 2006, after a confidential informant told law enforcement that Goncalves was distributing drugs and was armed with a semi-automatic handgun, Goncalves became the subject of surveillance and several controlled drug buys. Id. at 247. On May 3, 2006, after Goncalves became aware of the surveillance, he led police on a high-speed chase which ended with Goncalves crashing his car[1] in his mother's driveway in Pawtucket. Id. at 248. Following his arrest, police found $1,081 in cash and two cell phones on Goncalves. A search of the car revealed 65.43 grams of powder cocaine hidden in the gas tank cap and a loaded and cocked .45 caliber semi-automatic pistol hidden under the hood. Id. at 248. During a search pursuant to a warrant, Police also found 10.43 grams of crack cocaine in Goncalves' bedroom at his mother's house in Pawtucket and 92.43 grams of crack cocaine in Goncalves' Providence apartment, together with a selection of drug paraphernalia. Id.

On May 15, 2006, an attorney was appointed to represent Goncalves. On August 25, 2006, Goncalves entered a plea agreement (Dkt. No. 18), but he withdrew the agreement just prior to the scheduled change of plea hearing. (Minute Entry 10/17/2006). Goncalves then parted ways with his court-appointed attorney and

---

[1]

At the time, the car was registered to Goncalves's girlfriend.

retained private counsel to represent him. (Dkt. No. 31). On November 15, 2006, Goncalves filed a motion for a <u>Franks</u>[2] hearing in which he sought to suppress all evidence found during the search made pursuant to a warrant. (Dkt. No. 37).

On November 17, 2006, the government filed an Information pursuant to 21 U.S.C. §851, giving notice that Goncalves had a previous conviction for a felony drug offense which doubled the mandatory minimum prison term on Count I from ten to twenty years.[3] (Dkt. No. 40). The felony drug offense at issue related to a 2001 Rhode Island state court conviction (P2/01-1460A) for the delivery of marijuana, for which Goncalves received a two-year suspended sentence and two years' probation. At the time of that offense, Goncalves was 19 years old.

On November 30, 2006, Goncalves filed a motion to suppress the crack cocaine and the weapon found in the car he was driving on the day of his arrest. (Dkt. No. 47). After a hearing on Goncalves' motions on January 4 and 5, 2007, the motion for a <u>Franks</u> hearing was denied. Likewise, Goncalves' motion to suppress the evidence

---

[2]

<u>Franks v. Delaware</u>, 436 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

[3]

Under the plea agreement, Goncalves would have been subject to a mandatory minimum term of ten years on Count I, which indicated that the government did not intend to file a §851 if Goncalves proceeded with his guilty plea pursuant to the plea agreement. The penalty for the gun offense in Count V was a mandatory consecutive five-year term.  Plea Agreement at 6-7 (Dkt. No. 18).

located in the car was denied. (Dkt. No. 58). The case proceeded to trial.

On March 1, 2007, following a four-day trial before a jury, Goncalves was convicted on all five counts of the indictment. (Dkt. No. 69). Sentencing was scheduled for June 15, 2007. Upon Goncalves' request, the sentencing was rescheduled to June 18, 2007 (Docket Entry 06/08/2007). After Goncalves' counsel raised a number of sentencing issues at the June 18, 2007 sentencing hearing, he was granted an additional 60 days to develop the defense's argument. The sentencing was re-scheduled for August 23, 2007. (Docket Entry 06/18/2007). That date was subsequently vacated, to be re-scheduled at a later date. (Docket Entry 07/27/2007). Sentencing was then scheduled for October 23, 2009 and, at Goncalves' request, re-scheduled for October 29, 2007.

On October 7, 2009, Concalves requested a further continuation of his sentencing to December 2009, noting that "[t]he House Judicial [sic] Sub-Committee on Terrorism and Homeland Security in July 2009, approved a bill designed to end the disparity in sentencing for federal crack and powder cocaine offenses and there is a strong likelihood of the bill passing when the House and Senate reconvenes in November 2009." Mot. Cont. Sentencing (Dkt. No.107). The motion was granted and sentencing was re-scheduled for December 8, 2009. Goncalves submitted further requests for continuation of the sentencing hearing on December 7, 2009 (Dkt.

4

No. 108) and February 3, 2010 (Dkt. No. 110), both of which were granted.

On March 19, 2010, Goncalves was sentenced to (1) twenty years' imprisonment on Counts I, II, and III, to run concurrently; (2) ten years on Count IV, also to run concurrently; and (3) five years on Count V, to run consecutively; all such sentences to be followed by concurrent terms of supervised release. (Dkt. No. 115). Goncalves' motion for a downward departure was terminated on the grounds that the case was a non-guideline case to which statutory mandatory minimums applied. (Oral Order 03/19/2010).

On March 23, 2010, Goncalves appealed his conviction and sentence, arguing that (1) the gun and powder cocaine found in his car after his arrest should have been suppressed; and (2) his sentence should be calculated under retroactive application of the Fair Sentencing Act of 2010 (the "FSA").

On August 3, 2010, the President signed the FSA which reduced the mandatory minimums for certain drug crimes. United States v. Goncalves, 642 F.3d at 252. Under the FSA, the mandatory minimum for 92.43 grams of crack cocaine with a prior drug felony would have resulted in a sentence of ten years instead of the twenty years Goncalves received on Count I; no mandatory minimum would have applied to Counts II and III.

On April 28, 2011, the First Circuit Court of Appeals affirmed Goncalves' conviction after determining that the search of

5

Goncalves' car was valid. Id. at 251. With respect to Goncalves' sentencing argument, the First Circuit concluded that the FSA was "clearly inapplicable to this case," while acknowledging that "in human terms, the result is much less attractive." Id. at 254-255. Accordingly, the Court of Appeals affirmed the twenty-year mandatory minimum sentence on Count I, the concurrent sentences on the weapons charge in Count IV, and the consecutive term imposed on the weapons charge in Count V. Id. at 225.   Upon invitation by the government, the sentences on Count II (which carried a mandatory minimum of ten years) and on Count III (which did not carry a mandatory minimum) were vacated and remanded for re-sentencing. Subsequently, those two sentences were both modified to 97 months' imprisonment, to run concurrently. (Dkt. No. 134).

Following the First Circuit's decision on Goncalves' direct appeal, Goncalves filed a timely motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence (Dkt. Nos. 132, 135) based on the contention that he received ineffective assistance of counsel.[4] The government filed a response in opposition (Dkt. No.

---

[4]
The Court notes that, in a footnote to his memorandum, Goncalves requests appointment of counsel and a hearing on his § 2255 motion. Goncalves' Mem. at Page 15 of 25, FN 5 (Dkt. No. 135).

With respect to the former, it is well established that "[a] convicted criminal has no constitutional right to counsel with respect to habeas proceedings[,]" and that includes habeas petitions raising claims of ineffective assistance of counsel. Ellis v. United States, 313 F.3d 636, 652 (1st Cir.2002). However, the Court has the discretion to appoint counsel for an indigent litigant in "exceptional circumstances[.]" Cookish v. Cunningham,

139), to which Goncalves filed a reply. (Dkt. No. 141).

## II. Standard of Review

Pursuant to Section 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the

---

787 F.2d 1, 2 (1st Cir.1986).

Because this Court deems the record of the case sufficient to determine whether Goncalves received ineffective assistance of counsel and Goncalves' submissions demonstrate that he is entirely capable of presenting his case, the Court concludes that this is not an exceptional case which would benefit from the appointment of counsel.

With respect to the latter, a hearing on a petitioner's § 2255 motion is required "unless it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b) of the Rules governing Section 2255 Proceedings in the United States District Courts, 28 U.S.C.A. § 2255. However, the Court may dismiss the motion without a hearing where, even assuming that "the petitioner's allegations are true, the petitioner would not be entitled to relief, or where the court cannot accept the petitioner's allegations as true because 'they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Fernandez-Malave v. United States, 502 F.Supp.2d 234, 241 (D.P.R., Jun. 30, 2007 (quoting Dziurgot v. Luther, 897 F.2d 1222, 1225 (1st Cir.1990)).

In this case, because Goncalves' contentions assert conclusions and are contradicted by the record, the Court determines that no evidentiary hearing is necessary.

sentence." 28 U.S.C. § 2255(a).

Relief under Section 2255 is available only if the Court finds a lack of jurisdiction, constitutional error, or a fundamental error of law.  See United States v. Addonizio, 442 U.S. 178, 184-84, 99 S.Ct. 2235, 60 L.Ed.2d 805  (1979) (holding that "an error of law does not provide a basis for a collateral attack unless the claimed error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'")(quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). A fundamental error of law is a defect "'which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" Knight v. United States, 37 F.3d 769, 772 (1st Cir.1994) (quoting Hill v. United States, 368 U.S. at 428, 82 S.Ct. at 471)).

Generally, claims of sentencing errors are not cognizable in a § 2255 proceeding absent "exceptional circumstances;" however, a petition does not face the same hurdle for claims of ineffective assistance of counsel regarding sentencing. Knight v. United States, 37 F.3d 769, 773-74 (1st Cir.1994).

Under the Sixth Amendment, each defendant is guaranteed the right to effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must show: that (1) counsel's performance was deficient, i.e. "counsel's performance fell below an objective standard of reasonableness;" and (2) the

deficient performance prejudiced the defense, *i.e.* "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To satisfy the first prong under Strickland, "the defendant 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" <u>United States v. Manon</u>, 608 F.3d 126, 131 (1st Cir.2010) (quoting <u>Strickland</u>, 466 U.S. at 690)). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption ... that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Bucci v. United States</u>, 662 F.3d 18, 30 (1st Cir. 2011)(quoting <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. 2052).

With regard to the second prong, "[t]o demonstrate 'prejudice,' the defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" <u>United States v. Rodriquez</u>, 675 F.3d 48, 57 (1st Cir. 2012)(quoting <u>Porter v. McCollum</u>, 558 U.S. 30, 38-39, 130 S.Ct. 447, 453, 175 L.Ed.2d 398 (2009)).

Although the defendant is not required to show "'that counsel's deficient conduct more likely than not altered the outcome'" of his trial,[] it does require "'a probability sufficient to undermine confidence in [that] outcome.'" United States v. Rodriquez, 675 F.3d at 57 (quoting Porter, 558 U.S. at 43, 130 S.Ct. at 455–56)).

### III. Goncalves' § 2255 Motion

A. Application of the FSA

In his motion, Goncalves first alleges that counsel was ineffective for "failing to move . . . [Goncalves'] sentencing date in contemplation of the passing and presidential signing of the [FSA]." Goncalves' Mem. at Page 6 of 25 (Dkt. No. 135). As Goncalves freely acknowledges, however, "counsel of record filed for continuances through the proceedings." Id. at Page 9 of 25. A review of the record reveals that Goncalves' counsel successfully requested at least five continuances of the sentencing hearing. Although the sentencing hearing was initially scheduled for June 15, 2007 (Docket Entry 03/02/2007), sentencing did not take place until March 19, 2010, almost three years after the trial had concluded. (Dkt. No. 115). During that time, counsel specifically requested continuances "in light of the fact that several Congressmen have introduced bills in both the House and the Senate seeking to modify the disparities between crack cocaine and powder cocaine." Mot. Cont. Sentencing at 1 (Dkt. No. 107).

The transcript of the sentencing hearing also supports

10

Goncalves' acknowledgment that his counsel again addressed the anticipated passage of the FSA at some length and argued for a lower sentence on that ground. Transcript of Sentencing Hearing 03/19/2010 at 10:4-12:15, 13:22-14:6, 14:9-10.

At the time sentencing was imposed, it was unclear when, and to what extent, the drug laws would be changed. Although the FSA was enacted only four months after Goncalves' sentencing, its retroactivity was not established until 2012. See Dorsey v. United States, – U.S.–, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012) (determining that the FSA applied to offenders whose crimes preceded the effective date of the FSA, but who were sentenced after that date, August 3, 2010.)

Under those circumstances, and in light of the continuing and successful efforts by Goncalves' counsel to delay sentencing by almost three years, counsel's failure to request yet another continuance cannot be said to fall "'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d at 131 (quoting Strickland, 466 U.S. at 690). Moreover, there is no indication that this Court would have granted such a request and that it would have continued the hearing for more than four months beyond the three years the matter was already pending.

B. Prior Ownership of Goncalves' Car

As the second ground for his ineffective assistance of counsel claim, Goncalves suggests that his counsel should have inquired

whether the car Goncalves was driving prior to his arrest had been previously owned and whether it had been purchased at an auction or dealership. Goncalves Mem. at Page 11 of 25. Goncalves broadly contends that such an inquiry might have created reasonable doubt as to his knowledge of the gun that was found wedged under the hood of the car. Id.

The record in this case reveals that police knew that Goncalves regularly used the car to make drug deliveries, United States v. Goncalves, 642 F.3d at 249, and that he had done so for months preceding his arrest. Likewise, the police had been informed that Goncalves possessed a handgun. Id. After Goncalves led police on a high-speed chase, after which he "apparently [tossed] away the key," the gun was found "wedged under the hood - loaded and cocked - where it could be retrieved with a single movement once the hood was popped open." Id. Goncalves' flight from police "supported the inference that drugs or guns - here, both- were knowingly concealed within." Id.

It is undisputed that Goncalves' counsel sought to suppress evidence of the gun and drugs found in the car. Goncalves' Mot. Suppress (Dkt. No. 47). The motion was denied by this Court and its denial was upheld on direct appeal. United States v. Goncalves, 642 F.3d at 251. Nothing in the record or in Goncalves' petition suggests that further inquiry into the origin of the car would have yielded evidence creating reasonable doubt as to the ownership

and/or possession of the gun. Rather, the evidence demonstrated that Goncalves had been regularly using the car for an extended period of time and that the gun was found fully loaded, within easy access of Goncalves.

Under those circumstances, the absence of any inquiry into prior ownership of the car cannot be deemed an "unprofessional error," nor is there any indication - in view of the overwhelming evidence against Goncalves - that "the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 687-88.

C. Goncalves' Decision to reject the Plea Agreement

In his final argument, Goncalves states that neither his appointed nor his retained counsel informed him that, even if Goncalves had succeeded in suppressing evidence of the gun, he still would have received an enhanced sentence under the guidelines for possession of the gun based on statements by an informant. Goncalves Mem. at Page 18-19 of 25.  Goncalves suggests that, had he known of this fact, he would have taken the plea agreement offered by the government. Id. at Page 20 of 25.

It is indisputable that this Court had no choice but to impose a very significant sentence for the offenses of which Goncalves was convicted at trial. It is also indisputable that, had Goncalves entered a guilty plea, the statutory minimum sentence on Count I, without the §851 enhancement, would have been ten years'

13

imprisonment, half of what Goncalves ultimately received. In addition, Goncalves was subject to the consecutive five-year sentence for the gun offense in Count V.  As such, the total sentence Goncalves received was driven by statutory mandatory minimums, not by application of the guidelines.

At the time Goncalves elected not to proceed with his plea under the agreement, his motion to suppress had not been raised yet. Accordingly, Goncalves made his decision to proceed to trial without knowing whether or not the gun that was found during the search of his car would be admitted. After the motion was denied, the resulting consecutive five-year sentence for Goncalves' conviction on Count V was statutorily mandated; it was not the result of guideline enhancements for relevant conduct.

In other words, even if, as Goncalves now asserts, his counsel failed to advise him that Goncalves could receive additional points under the sentencing guidelines based on statements by an informant, Goncalves fails to show how such an omission resulted in "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Rodriguez, 675 F.3d at 57.

### V.   Conclusion

For all of the foregoing reasons, Goncalves' motion to vacate, set aside, or correct his sentence is DENIED and DISMISSED.

**Ruling on Certificate of Appealability**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings for the United States District Courts, this Court hereby finds that this case is not appropriate for the issuance of a certificate of appealability because Goncalves has failed to make "a substantial showing of the denial of a constitutional right" as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Goncalves is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rules Governing § 2255 Cases, Rule 11(a).


SO ORDERED.


/s/ Mary M. Lisi

Mary M. Lisi

United States District Judge

February 6, 2014